UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------x
UNITED STATES OF AMERICA,

      -against-

MARVIN JOHNSON,

              Defendant.

--------------------------------------------------x

**MEMORANDUM AND ORDER**
Case No. 11-CR-405 (FB)

*Appearances:*
*For the United States of America:*
BRANDON DAVIS
Assistant United States Attorney
Eastern District of New York
271 Cadman Plaza East
Brooklyn, New York 11201

*For the Defendant:*
DAWN M. CARDI
Cardi & Edgar LLP
99 Madison Avenue, 8th Floor
New York, New York 10016

**BLOCK, Senior District Judge:**

Marvin Johnson is currently serving a life sentence for murder in aid of racketeering and other crimes related to his affiliation with the "Hull Street Crew." The convictions and sentence were affirmed on appeal. *See United States v. McKenzie*, 749 F. App'x 29 (2d Cir. Sept. 12, 2018). He has moved to vacate his convictions and sentence pursuant to 28 U.S.C. § 2255 and, in addition, to reduce his sentence to 25 years' imprisonment pursuant to 18 U.S.C. § 3582(c)(1)(A). Johnson's appointed counsel has asked the Court to consider the § 3582(c) motion

first.[1]

The Court has previously written at length about the sea change wrought by the amendment of §3582(c) by the groundbreaking First Step Act to allow federal prisoners to directly seek sentence reductions. *See United States v. Johnson*, 754 F. Supp. 3d 305 (E.D.N.Y. 2024); *United States v. Tavarez*, 747 F. Supp. 3d 557 (E.D.N.Y. 2024); *United States v. Russo*, 643 F. Supp. 3d 325 (E.D.N.Y. 2022). Such reductions are commonly referred to as "compassionate release" even if the reduction sought would not result in immediate release. *See Russo*, 643 F. Supp. 3d at 328.

As explained in *Tavarez*, granting a motion for compassionate release requires a district court to "determine that three independent, necessary requirements have been satisfied: (1) the defendant has exhausted administrative remedies; (2) an extraordinary and compelling reason exists for sentence reduction; and (3) the [18 U.S.C.] § 3553(a) factors warrant reduction." 747 F. Supp. 3d at 559. Since it is undisputed that Johnson has exhausted his administrative remedies, only the second and third requirements are at issue.

---

[1]The Court initially appointed counsel to represent Johnson with respect to his § 2255 motion. She subsequently agreed to handle the § 3182(c) motion as well and has provided exemplary representation in that regard.

With respect to the second requirement, a district court "has broad discretion to consider the 'full slate' of extraordinary or compelling reasons that could support [a] motion for compassionate release under the First Step Act." 754 F. Supp. 3d at 310 (citing *United States v. Brooker*, 976 F.3d 228 (2d Cir. 2020)).[2] This broad discretion is now reflected in the Sentencing Commission's policy statement regarding compassionate release, which adds to the previously short list of reasons a catch-all for "any other circumstances or combination of circumstances that, when considered by themselves or together…, are similar in gravity" to a listed reason. U.S.S.G. § 1B1.13(b)(5).

There are, however, some limits on district courts' "broad discretion" under *Brooker*. By statute, consideration of "rehabilitation…alone" is prohibited, *see Brooker*, 976 F.3d at 238 (quoting 28 U.S.C. § 994(t)), although a court may find that "rehabilitation plus"—"meaning rehabilitation in conjunction with other appropriate factors"—warrants consideration of compassionate release. *Johnson*,

---

[2]In *United States v. Rodriquez*, 147 F.4th 217 (2d Cir. 2025), the Second Circuit stated, "Second, a court must consider the sentencing factors set forth in 18 U.S.C. § 3553(a) to the extent they are applicable." *Id.* at 222 (internal quotation marks omitted). This was not a command to district courts to address the three requirements in a specific order, however, because it is clear that "if a district court determines that one of these conditions is lacking, it need not address the remaining ones." *United States v. Keitt*, 21 F.4th 67, 73 (2d Cir. 2021). The Court's practice is to address the existence of extraordinary and compelling reasons first because that inquiry is typically more straightforward that a full-blown reconsideration of the § 3553(a) factors.

3

754 F. Supp. 3d at 311 (internal quotation marks omitted). In addition, the Second Circuit has held that "[c]hallenges to the validity of a conviction—including potential-innocence claims—cannot qualify as 'extraordinary and compelling reasons' . . . because they can (and therefore must) be brought in a section 2255 petition." *United States v. Fernandez*, 104 F.4th 420, 433 (2d Cir. 2024). That holding is currently under review in the Supreme Court. *See Fernandez v. United States*, ___ U.S. ___, 145 S. Ct. 2731 (2025).

Compassionate release based on sentencing disparities has been a particularly thorny issue. In addition to precluding consideration of claims of innocence, *Fernandez* held that "[t]here is nothing 'extraordinary' or 'compelling' about a sentence disparity that results from a co-defendant's decision to plead guilty *and assist the government*." 104 F.4th at 429. (2d Cir. 2024) (emphasis added). Although the Supreme Court did not grant certiorari on that issue, it is currently considering a related challenge to the Sentencing Commission's policy statement—embodied in U.S.S.G § 1B1.13(b)(6)—that non-retroactive changes in the law can be considered in some circumstance. *See United States v. Rutherford*, 120 F.4th 360 (3d Cir. 2024), *cert. granted*, ___ U.S. ___, 145 S. Ct. 2776 (2025). "The First, Fourth, Ninth, and Tenth Circuits said that such changes could be considered, while the Sixth, Seventh, Eighth, and D.C. Circuits said they could

4

not." *Id.* at 366; *see also id.* at 380 (joining the circuits holding that non-retroactive changes cannot be considered). The Second Circuit has not joined either camp. *See United States v. Orlandez-Gamboa*, 2026 WL 471835, at \*5 (2d Cir. Feb. 19, 2026) ("We . . . do not reach the other issues raised, such as the propriety of Section 1B.13(b)(6) or whether Section 1B1.13 is binding on district courts' consideration of defendant-filed motions for compassionate release.").

Johnson has presented an impressive list of his efforts towards rehabilitation, some of which were discussed at oral argument. He has completed several self-improvement programs and skill classes—some before the First Step Act became law, has been "an excellent employee" in the prison kitchen, has been "instrumental in mentoring and guiding [other] prisoners," and has maintained close family ties despite his incarceration. *See* Tr. of Mar. 20, 2026, at 6-11.

Recognizing that his efforts at rehabilitation, however commendable, are not sufficient on their own, Johnson offers the following "plus" factors: He was incarcerated during the entire COVID pandemic, which his counsel described as "essentially being in the SHU for almost four years." Tr. of Mar. 20, 2026, at 12. He has two health issues—obesity and hyperthyroidism—that may make him susceptible to the virus in the future. He had a difficult childhood and was twenty-three years old at the time he committed his crimes. Finally, some of his co-

5

defendants were offered plea deals in exchange for their cooperation and received much more lenient sentences.[3]

The Court has demonstrated its willingness to consider each of those "plus" factors in an appropriate case. Both the punitive nature of confinement during the COVID pandemic and susceptibility to future infection were part of the mix in *Russo*. *See* 643 F. Supp. 3d at 332-33. Age and sentencing disparities between defendants who plead guilty and those who do not—the so-called "trial tax"—were at issue in *United States v. Birkett*, 2023 WL 4274683, at *4-*5 (age), *7 (sentencing disparity) (E.D.N.Y. June 29, 2023). *See also Russo*, 643 F. Supp. 3d at 337-38 (discussing age and disparity of sentence of Birkett's co-defendant Paul Moore).

Those factors, however, do not always add up to extraordinary and compelling reasons for compassionate release. The risk of COVID has been greatly mitigated by vaccination and for many may be "more theoretical than…the statistics…support," Tr. of Mar. 20, 2026, at 14; what risk remains will likely persist "whether individuals are incarcerated or at liberty," *Russo*, 643 F. Supp. 3d

---

[3]Whether the government offered Johnson a plea of thirty years, whether Johnson's trial counsel conveyed that offer to his client, and whether Johnson would have accepted it are all disputed issues of fact raised in Johnson's § 2255 motion. For present purposes, the Court assumes that the deal was never offered as part of the government's discretion in such matters.

6

at 333 (internal citations omitted). Although research and statistics may subsequently evolve, a defendant's age and childhood circumstances are invariably considered at the time of the original sentencing. *See United States v. Jones*, 2025 WL 1635962, at *4 (E.D.N.Y. June 6, 2025).

With respect to sentencing disparities, *Fernandez* limits the Court's ability to consider disparities resulting from cooperation agreements.[4] *Rutherford* may restrict its ability to consider disparities based on non-retroactive changes in the law. However, the Court's primary concern with sentencing disparities is whether a defendant's relatively long sentence was due to something other than "a difference in offense conduct." *Birkett*, 2023 WL 4274683, at *7. As with age and childhood circumstances, the Court almost always considers differences in culpability at the time of sentencing.

Here, the Court finds that Johnson's proposed "plus" factors—even taken together and in conjunction with his rehabilitation efforts—do not rise to the level of extraordinary and compelling reasons. His medical conditions may increase the severity of an infection but his risk of contracting COVID in the first place is

---

[4]The Second Circuit did not completely "foreclose the possibility that significant sentencing disparities, even between a defendant who went to trial and a co-defendant who pleaded guilty and cooperated, might, in some unusual circumstances, warrant a finding of 'extraordinary and compelling' reasons to grant a sentence reduction." *Fernandez*, 104 F.4th at 429 n.4 (2d Cir. 2024).

comparable to the general prison population. His reliance of his age and background without any updated evidence of the relevance of factors already considered at sentencing strikes the Court as "trying to get a second bite of the apple." Tr. of Mar. 20, 2026, at 15.

Moreover, this case does not present "unusual circumstances" warranting a departure from *Fernandez*'s usual rule that lighter sentences for cooperating co-defendants are neither extraordinary nor compelling enough to warrant compassionate relief. And Johnson received a harsh sentence compared to his remaining co-defendants who pleaded guilty because he was convicted of the far more serious crime of murder.

Indeed, Johnson orchestrated and personally participated in the gruesome torture and suffocation of Kevin Obermuller, with whom Johnson had a dispute over payment for a car Obermuller had purchased from Johnson. In addition, he took pains to create a false alibi for his involvement, insisted that Obermuller's body be burned to hide the evidence, and chose to give false testimony in his own defense at trial. Even if the Court were to conclude that Johnson had shown extraordinary and compelling reasons, a consideration of the § 3553(a) factors would lead the Court to conclude that, as matters now stand, a life sentence is still an appropriate punishment given the nature of the offense and Johnson's efforts to

avoid responsibility for it. That does not foreclose the possibility, however, that additional evidence of a change in Johnson's character—such as acceptance of responsibility and continued efforts at rehabilitation—would result in a different § 3553(a) calculus in the future. *See Conception v. United States*, 597 U.S. 481, 496 (2022) ("The text of the First Step Act does not so much as hint that district courts are prohibited from considering evidence of [post-sentencing] rehabilitation, disciplinary infractions, or unrelated Guidelines changes.").

A final word about rehabilitation: In her excellent submissions Johnson's counsel cites the Court's comment in *Russo* that compassionate release provides a "powerful incentive for good behavior during long terms of incarceration." 643 F. Supp. 3d at 339. The question then arises how that incentive operates for a defendant who has served only twelve years of a life sentence. Arguably, denying compassionate release to such a defendant removes the incentive for him (and perhaps others) to continue their attempts at self-improvement. A prisoner in Johnson's position might say, "If I have no hope for early release, why bother?"

The Court disagrees. In the first place, the principal incentive for rehabilitation is (or should be) improving the defendant's quality of life whether that life is lived in prison or at liberty. In addition, granting "compassionate release" in a form that still leaves a substantial term of imprisonment to be served

may actually disincentivize continued efforts at rehabilitation. "If I already know I am getting out early," our hypothetical prisoner would say, "why bother?"

In the end, the consideration that proves dispositive for the Court is that a denial of compassionate release is never with prejudice. Although Johnson may not yet have shown extraordinary and compelling circumstances, he has clearly set himself a positive course. He may well satisfy that standard after continuing on it.

For the foregoing reasons, Johnson's motion for compassionate release is denied. As noted, the denial is without prejudice to Johnson's ability to seek the same relief at a later date.

**SO ORDERED.**

 /S/ Frederic Block_____
FREDERIC BLOCK
Senior United States District Judge

Brooklyn, New York
May 13, 2026

10